UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NICHOLAS FLORES, and
CARMEN FLORES

      PLAINTIFFS,

v.                          CASE NO.:    9:26-cv-80157

DEPUTY K. SCOTT, individually;
DEPUTY JOHN DOE, individually, and
SHERIFF RIC BRADSHAW, in his
official capacity as SHERIFF OF
PALM BEACH COUNTY,

      DEFENDANTS.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiffs, Nicholas Flores and Carmen Flores, by and through their undersigned counsel, hereby file this Complaint against Defendants Deputy K. Scott individually, Deputy John Doe, individually, (collectively referred to as "Individual Defendants,"), and Sheriff Ric Bradshaw, in his official capacity as Sheriff of Palm Beach County, Florida, and allege as follows:

## PARTIES

1.  At all relevant times herein, Plaintiff Nicholas Flores ("Nicholas") was a resident of Lake Worth Beach, Florida, Plam Beach County, Florida, and resided with his grandmother, Plaintiff Carmen Flores.

2.  At all relevant times herein, Plaintiff, Carmen Flores ("Ms. Flores") was a resident of Lake Worth Beach, Palm Beach County, Florida, and is the grandmother of Plaintiff Nicholas Flores.

3.      Defendant Sheriff Ric Bradshaw is the duly elected Sheriff of Palm Beach County, Florida, and is the final policymaker for the Palm Beach County Sheriff's Office with respect to law enforcement practices, training, supervision, discipline, and use-of-force policies. He is sued in his official capacity.

4.      At all times material, Defendant Sheriff Bradshaw was responsible for the training, supervision, discipline, control and conduct of detectives and deputies of the Palm Beach County Sheriff's Office, including the Individual Defendants.

5.      At all times relevant hereto, Defendant Deputy K. Scott ("Scott,") (ID # 8491) was a duly appointed Palm Beach County Sheriff's Office deputy acting under color of state law and within the course and scope of his employment.  He is sued individually.

6.      At all times relevant hereto, Defendant Deputy John Doe is an unidentified sworn deputy of the Palm Beach County Sheriff's Office acting under color of state law and within the course and scope of his employment.  He is sued individually.

## JURISDICTION AND VENUE

7.      Plaintiffs bring this action against Defendants to redress the deprivation of rights secured to the Plaintiffs by the First and Fourth Amendments to the United States Constitution, through 42 U.S.C. § 1983 and the laws of the State of Florida.

8.      The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

9.      Personal jurisdiction and venue are proper in this District because the events complained of occurred in Palm Beach County, Florida, which lies within the Southern District of Florida.

10.     Plaintiffs complied with all pre-suit notice requirements of § 768.28, Florida Statutes.

11.     At all times relevant herein, Defendants Scott and Doe were acting as sworn law enforcement officers exercising police authority and acting under color of state law.

## FACTUAL ALLEGATIONS

12.     On June 26, 2025, at approximately 9:15 a.m., Plaintiff Nicholas observed a grey vehicle with dark tinted windows outside his home and, believing its occupants had threatened him before, approached the vehicle while holding a cell phone.

13.     Plaintiff Nicholas did not know that the vehicle was an unmarked police vehicle and did not touch the vehicle.

14.     Defendant Scott, a member of the Palm Beach County Sheriff's Office Fugitive Warrant Unit, was inside the unmarked vehicle conducting surveillance but had neither his body-worn camera nor in-car camera activated.

15.     As Nicholas was standing at the back of the unmarked car, without warning or justification, Defendant Scott exited the driver's door and walked directly up to Nicholas, grabbed him by the neck, choked him, lifted him off the ground, and threw him against a fence with excessive force.



16.     Nicholas posed no threat.  He used a cane to walk and was merely recording with his cell phone.

17.     Defendant Doe casually walked towards Defendant Scott and observed Defendant Scott with his arm around Nicholas' neck.



18.     Defendant Doe grabbed Nicholas' cane from his hand, swept Nicholas' legs out from underneath him, slammed him to the ground, bear hugged him and pinned Nicholas down on the cement with his left knee and leg on the left side of Nicholas' head.





19.     Defendants Scott and Doe stood Nicholas up and pushed him towards their vehicle, at which time Nicholas fell, striking his head on the car frame.

20.     The Individual Defendants arrested Nicholas for obstruction of justice/resisting without violence, even though he had committed no crime.

21.     The Individual Defendants omitted any mention of the use of force in the arrest report, and the State Attorney subsequently nolle prossed all charges on October 22, 2025, for lack of evidence.

22.     Plaintiff Ms. Flores, Nicholas' grandmother, witnessed the entire encounter, feared for Nicholas' life, and suffered severe emotional shock, anguish, and distress at the scene, and has continued to suffer emotional and psychological trauma thereafter.

23.     The excessive force used by Defendants Scott and Doe caused Nicholas to suffer a Traumatic Brain Injury, ("TBI") and other serious physical injuries.  Nicholas continues to suffer TBI related symptoms, pain and psychological trauma.

24.     On July 3, 2025, Plaintiffs served a formal Notice of Claim on the Palm Beach County Sheriff's Office and the Florida Department of Financial Services pursuant to 768.28, Florida Statutes.

25.     Prior to the incident, Defendant Deputy Scott had been the subject of multiple Internal Affairs investigations involving the use of neck-compression force during arrests, placing the Palm Beach County Sheriff's Office on notice of his dangerous restraint techniques, yet the Palm Beach County Sheriff's Office failed to impose meaningful discipline, retraining, or restrictions on his use of force.

26. The violations described herein resulted from the Palm Beach County Sheriff's Office policies, customs, patterns, and practices, through Defendant Sheriff Bradshaw.

27. All Defendants acted under color of state law.

**POLICIES, CUSTOMS, OR PRACTICES (Monell Allegations)**

28. Plaintiffs reallege ¶¶ 1–26 as though fully set forth herein.

29. At all times material, the Palm Beach County Sheriff's Office through Defendant Sheriff Bradshaw maintained or perpetuated policies, customs, or practices that were the moving force behind the injuries suffered by Plaintiff Nicholas Flores, including, but not limited to:

    a. A custom of tolerating or condoning the use of neck-compression or choking techniques during arrests, despite the known and obvious risk of serious bodily injury or death;

    b. Deliberate indifference to repeated internal affairs complaints against Defendant Scott for using choking techniques and/or neck restraints during arrests on or about May 2, 2009, and April 28, 2020, due to Defendant Sheriff Bradshaw's failure to impose meaningful discipline, retraining, or restrictions;

    c. A failure to adequately train deputies on the constitutional limits of force, the dangers of neck restraints, and the proper handling of citizen recordings of police activity, creating an obvious risk of the precise constitutional violations at issue here; and

    d. A pattern of rubber-stamping or ratifying use-of-force incidents involving neck restraints or similar tactics, signaling to deputies that such conduct would go unpunished and encouraging repetition of unconstitutional behavior.

30.     Defendant Bradshaw had actual or constructive notice of prior use-of-force complaints against Defendant Scott but elected to keep him on duty without retraining, supervision, or discipline, thereby ratifying his conduct and demonstrating deliberate indifference to the constitutional rights of persons with whom deputies would come into contact.

31.     Theses policies, customs, or practices, of the Palm Beach County Sheriff's Office, through Defendant Sheriff Bradshaw were so permanent and well-settled as to constitute the standard operating procedure of the Palm Beach County Sheriff's Office and were the direct, proximate cause of Nicholas's injuries complained of herein rendering Defendant Sheriff Bradshaw liable in his official capacity, under Monell.

## BAD-FAITH / MALICIOUS-PURPOSE ALLEGATIONS

32.     Plaintiffs further allege that Defendants Scott and Doe acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Nicholas' rights and safety when they: (i) grabbed Nicholas by the neck, choked him, lifted him off the ground, and threw him against a fence; (ii) forced him to the pavement and applied knee and leg pressure to his head; and (iii) arrested him without arguable probable cause, all while knowing Nicholas was using a cane to walk, posed no threat and was merely holding a cell phone.

33.     The Individual Defendants' bad-faith, malicious, wanton, and willful conduct pierces any immunity otherwise available to them under Fla. Stat. § 768.28(9)(a), rendering them personally liable. Alternatively, to the extent the Individual Defendants are found to have acted within the course and scope of their employment and without bad faith or malicious purpose, Defendant Sheriff Ric Bradshaw, in his official capacity, is vicariously liable for their acts and omissions pursuant to Florida law, including Fla. Stat. § 768.28.

34.     As a direct and proximate result of the Individual Defendants' bad-faith, malicious, wanton, and willful acts, and the foregoing policies, customs, or practices, Plaintiffs suffered the injuries and damages described herein.

## CLAIMS FOR RELIEF

### Count I
### 42 U.S.C. § 1983
### Violation of Fourth Amendment Rights - Excessive Force
### (against Defendant Scott and Defendant Doe in their individual capacity)

35.     Plaintiff Nicholas Flores repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

36.     At all relevant times, the Individual Defendants acted under color of state law and were authorized to act for the Palm Beach County Sheriff's Office.

37.     Defendants' conduct deprived Plaintiff Nicholas Flores of rights secured by the Constitution or laws of the United States, including his clearly established right under the Fourth Amendment to be free from excessive and unreasonable force for the period of his detention.

38.     Defendant Scott used excessive force against Plaintiff Nicholas Flores when he grabbed Nicholas by the neck, choked him, lifted him off the ground, and threw him against a fence with excessive force despite posing no threat, was merely holding a cell phone and recording.

39.     Defendant Doe used excessive force when he pinned Nicholas down on the cement with his left knee and leg on the left side of Nicholas' head.

40.     Additionally, Defendants Scott and Doe acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Nicholas's rights, thereby making them personally liable.

41.     The force used by Defendants was objectively unreasonable under the totality of the circumstances, in light of the minimal, if any, threat posed by Nicholas and the non-violent nature of his conduct.

42.     At the time of the incident, it was clearly established that the use of neck-compression, choking, or knee-on-head or neck force against a non-resisting, non-threatening individual violates the Fourth Amendment. No reasonable officer could have believed that grabbing Plaintiff by the neck, choking him, lifting him off the ground, throwing him against a fence, or pinning his head to the pavement was lawful under these circumstances, particularly where Plaintiff posed no threat, used a cane to walk, and was merely holding a cell phone.

43.     As a direct and proximate result of the Individual Defendants' excessive force, Nicholas suffered serious physical injuries, including a TBI, as well as pain, suffering, and extreme emotional distress.

44.     The policies, customs, and practices implemented, maintained, or ratified by Defendant Sheriff Ric Bradshaw, in his official capacity, were a moving force behind and causally connected to the constitutional violations described herein.

45.     Nicholas is entitled to compensatory damages, punitive damages against the Individual Defendants, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## Count II
### (42 U.S.C. § 1983)
### Violation of First Amendment Rights – Retaliation
### (Against Defendant Scott in his Individual Capacity)

46.     Plaintiff Nicholas Flores repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

47.     At all relevant times, Defendant Scott acted under color of state law as a sworn deputy of the Palm Beach County Sheriff's Office.

48.     The First Amendment protects the right of individuals to record police officers conducting their official duties in public.  *See Smith v. City of Cumming,* 212 F.3d 1332 (11th Cir. 2000).

49.     Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen to the deprivation of rights secured by the Constitution shall be liable to the party injured.

50.     Nicholas engaged in constitutionally protected activity when he recorded Defendant Scott with his cell phone while he was conducting his official duties in public.

51.     Nicholas suffered retaliatory conduct from Defendant Scott that would likely deter a person of ordinary firmness from exercising their First Amendment rights.

52.     Defendant Scott's actions in response to Nicholas's recording, grabbing Nicholas by the neck, choking him, lifting him off the ground, throwing him against a fence, and falsely arresting him, constitutes adverse actions that would deter a person of ordinary firmness from exercising their First Amendment right to record police officers.

53.     There is a causal connection between Nicholas's protected activity of recording and Defendant Scott's retaliatory actions, as evidenced by the immediate temporal proximity between Nicholas's recording and Defendant Scott's violent response.

54.     Defendant Scott initiated force and arrest only after observing that Nicholas was recording, and no enforcement action was taken until Nicholas engaged in this protected activity.

55.     Nicholas was arrested for obstruction of justice/resisting without violence despite having committed no crime, while similarly situated individuals who were not recording police officers were not subjected to arrest or excessive force.

56.     Defendant Scott's conduct was motivated by Nicholas's protected First Amendment activity of recording police officers, as demonstrated by the lack of any legitimate

law enforcement purpose for the use of force against Nicholas, who posed no threat and was merely exercising his constitutional right to record.

57.     A reasonable officer in Defendant Scott's position would have known that retaliating against an individual for recording police officers violates the First Amendment.

58.     Qualified immunity does not protect Defendant Scott because the right to record police officers was clearly established at the time of the incident, and no reasonable officer could have believed that using excessive force and arresting Nicholas for exercising this right was lawful.

59.     Defendant Scott acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Nicholas's rights and safety when he:

    a.   Used excessive force against Nicholas in retaliation for Nicholas's protected activity of recording;

    b.   Arrested Nicholas without probable cause for obstruction of justice/resisting without violence when Nicholas was merely exercising his constitutional right to record police officers;

    c.   Grabbed Nicholas by the neck, choked him, lifted him off the ground, and threw him against a fence with excessive force; and

    d.   Caused Nicholas to suffer a Traumatic Brain Injury (TBI) as a result of the retaliatory force used against him.

60.     Defendant Scott's bad-faith, malicious, wanton, and willful conduct pierces any immunity otherwise available to him under Fla. Stat. § 768.28(9)(a), rendering him personally liable.

61.     As a direct and proximate result of Defendant Scott's retaliatory actions, Nicholas suffered serious physical injuries, including a Traumatic Brain Injury (TBI), as well as pain, suffering, extreme emotional distress, and a chilling of his First Amendment rights.

62.     Nicholas is entitled to compensatory damages, punitive damages against Defendant Scott individually, and attorneys' fees and costs pursuant to.

### COUNT III
### (42 U.S.C. § 1983)
### False Arrest / Unlawful Seizure – Fourth Amendment
### (Against Defendants Scott and Doe, Individually)

63.     Plaintiff Nicholas Flores repeats and realleges paragraphs 1 through 34 of this Complaint as if fully set forth herein.

64.     At all times relevant herein, Defendants Scott and Doe were acting under color of state law as sworn law enforcement officers of the Palm Beach County Sheriff's Office.

65.     The Fourth Amendment to the United States Constitution guarantees individuals the right to be free from unreasonable seizures, including arrest without probable cause.

66.     Defendants Scott and Doe intentionally seized and arrested Plaintiff Nicholas Flores when they grabbed him by the neck, choked him, threw him to the ground, restrained him on the pavement with knee and leg pressure to his head, handcuffed him, and took him into custody.

67.     At the time of the arrest, Nicholas had committed no crime. He was lawfully present outside his residence, used a cane to walk, posed no threat to Defendants or anyone else, did not physically interfere with Defendants' activities, and was merely holding a cell phone and recording.

68.     Defendants lacked probable cause to arrest Nicholas for obstruction of justice, resisting without violence, or any other offense, because Nicholas did not obstruct, resist, or

oppose any lawful duty, nor did he engage in any conduct that could reasonably be construed as criminal.

69.     Defendants also lacked arguable probable cause, as no reasonable officer in Defendants' position could have believed that Nicholas's lawful conduct, approaching an unmarked vehicle, standing outside his home while holding a cell phone, constituted a violation of Florida law or justified an arrest.

70.     The absence of probable cause or arguable probable cause rendered Nicholas's seizure and arrest objectively unreasonable under the Fourth Amendment.

71.     The criminal charge of obstruction of justice/resisting without violence was later nolle prossed by the State Attorney's Office on October 22, 2025, due to insufficient evidence, further confirming that Defendants lacked any lawful basis to arrest Nicholas.

72.     At the time of the arrest, it was clearly established that arresting an individual without probable cause, or without arguable probable cause, violates the Fourth Amendment. No reasonable officer could have believed that arresting Nicholas under these circumstances was lawful.

73.     Defendants Scott and Doe acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Nicholas's constitutional rights by arresting him without lawful justification.

74.     As a direct and proximate result of Defendants' unlawful seizure and false arrest, Nicholas suffered loss of liberty, humiliation, emotional distress, injury to reputation, and physical injuries, including a Traumatic Brain Injury, as well as medical expenses and loss of enjoyment of life.

75.     Defendants Scott and Doe are not entitled to qualified immunity because their conduct violated Nicholas's clearly established Fourth Amendment rights, and no reasonable officer could have believed the arrest was lawful under the circumstances.

**COUNT IV**
**(42 U.S.C. § 1983)**
**Municipal Liability - Failure to Train and Supervise**
**(Against Defendant Sheriff Ric Bradshaw in his official capacity)**

76.     Plaintiff Nicholas repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

77.     Defendant Sheriff Ric Bradshaw, in his official capacity as Sheriff of Palm Beach County, maintained, implemented, or perpetuated policies, customs, or practices that amounted to deliberate indifference to Plaintiff Nicholas Flores' constitutional rights, including inadequate training, supervision, and discipline regarding the use of force, neck restraints, and interactions with citizens who are recording police activity.

78.     The Palm Beach County Sheriff's Office lacked adequate policies prohibiting neck restraints except in deadly-force circumstances, or failed to enforce such policies in practice.

79.     Prior to the incident at issue, Defendant Scott had been the subject of multiple Internal Affairs investigations involving the use of choking and neck-compression force during arrests, including a May 2, 2009 incident in which a citizen alleged that Defendant Scott choked him while handcuffed and delayed medical care, and a April 28, 2020, incident involving excessive force resulting in an injury where a vascular neck restraint was used.

80.     Despite repeated notice that Defendant Scott employed inherently dangerous neck-restraint techniques known to pose a substantial risk of serious injury or death, Defendant Sheriff Ric Bradshaw, in his official capacity as Sheriff of Palm Beach County, through the

policies, practices, and customs of the Palm Beach County Sheriff's Office, failed to discipline, retrain, supervise, or restrict him, demonstrating deliberate indifference to the obvious and predictable risk that the same unconstitutional force would recur, as it did in this case.

81.     By retaining Defendant Scott without discipline following prior neck-restraint complaints, Defendant Bradshaw ratified Scott's conduct and conveyed official approval.

82.     This policy, custom, or practice of deliberate indifference was the moving force behind the constitutional violation suffered by Nicholas.

83.     Defendant Scott's actions, including choking Nicholas and throwing him to the ground, and Defendant Doe's actions of holding Nicholas down on the cement with his leg on Nicholas's head, which resulted in Nicholas suffering a Traumatic Brain Injury, were a direct and foreseeable result of the failure to train and supervise.

84.     Absent these policies, customs, and failures to train and discipline, Defendants Scott and Doe would not have employed neck/head-compression force or effectuated an unlawful arrest, and Nicholas's injuries would not have occurred.

85.     As a direct and proximate result of these policies, customs, or practices, Nicholas suffered significant injuries and damages alleged herein.

### Count V
### Assault and Battery
### (Against Defendants Scott and Doe, individually, and Defendant Sheriff Ric Bradshaw, in his official capacity, for vicarious liability only)

86.     Plaintiff Nicholas Flores repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

87.     Defendants Scott and Doe intentionally and unlawfully threatened violence against Plaintiff Nicholas Flores.

88.     Defendant Scott approached Plaintiff aggressively, grabbed him by the neck, choked him and threw him to the ground, creating in Nicholas a well-founded fear that violence was imminent.

89.     Defendant Scott had the apparent ability to carry out the threat of violence.

90.     Defendant Doe held Plaintiff down on the cement by placing his left knee and leg on Nicholas' head, intentionally touching and striking Nicholas against his will.

91.     Such touching and use of force were harmful, offensive, and without lawful justification or consent.

92.     As a direct and proximate result of Defendants Scott's and Doe's assault and battery, Nicholas sustained significant injuries, including a TBI, pain and suffering, mental anguish, and loss of enjoyment of life.

93.     Defendant Sheriff Ric Bradshaw, in his official capacity, is vicariously liable for the acts of Defendants Scott and Doe under the doctrine of respondeat superior, as Defendants Scott and Doe were acting within the course and scope of their employment at the time of the incident.

94.     Defendants Scott and Doe acted in bad faith, with malicious purpose, or with wanton and willful disregard for Nicholas's rights, eliminating any immunity under § 768.28(9)(a).

**Count VI**
**Negligence**
**(Against Defendants Scott and Doe, individually, and Defendant Sheriff Ric Bradshaw, in his official capacity, for vicarious liability only)**

95.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

96.     This claim is pleaded in the alternative to the intentional tort claims, to the extent Defendants are found to have acted negligently rather than intentionally.

97.     Defendants owed a duty of care to Plaintiff to act reasonably under the circumstances and to refrain from using excessive or unnecessary force in the course of any investigative detention or arrest.

98.     Defendant Scott breached that duty by grabbing Nicholas by the neck, choking him, and throwing him to the ground without lawful justification or need.

99.     Defendant Doe breached that duty by holding Nicholas down on the cement with his left knee and leg on Nicholas's head, applying dangerous and excessive pressure to Nicholas's head and neck area.

100.    Defendant Sheriff Ric Bradshaw, in his official capacity, breached his duties by failing to properly train, supervise, and discipline deputies regarding the appropriate use of force, the dangers of neck restraints, and the proper handling of encounters with citizens who are recording police activity.

101.    The above-described acts and omissions were negligent and foreseeably created an unreasonable risk of physical and emotional harm to Nicholas.

102.    As a direct and proximate result of Defendants' negligence, Nicholas suffered serious physical injuries, including a TBI, pain and suffering, mental anguish, medical expenses, and loss of enjoyment of life.

### Count VII
### Intentional Infliction of Emotional Distress
### (Against Defendants Scott and Doe)

103.    Plaintiff Nicholas Flores repeats and realleges the allegations set forth in paragraphs 1 through 34 as if fully set forth herein.

104.    Defendants Scott and Doe acted intentionally in the manner in which they used force against Plaintiff Nicholas Flores.

105.    Defendant Scott intentionally grabbed Nicholas by the neck, choked him, and threw him to the ground without justification knowing, or substantially certain, that such conduct would cause severe physical and emotional harm.

106.    Defendant Doe intentionally held Nicholas down on the cement by placing his left knee and leg on Nicholas' head knowing, or with substantial certainty, that such conduct would cause severe physical and emotional harm.

107.    The Individual Defendants' conduct was so extreme and outrageous as to go beyond all bounds of decency in a civilized society as Nicholas posed no threat and was merely holding a cell phone and recording.

108.    Defendants' conduct was not undertaken in the course of any legitimate law-enforcement purpose, but was instead intended to punish and intimidate Nicholas for exercising his constitutional rights.

109.    As a direct and proximate result of the Individual Defendants' extreme and outrageous conduct, Nicholas suffered severe emotional distress, including anxiety, fear, humiliation, and psychological trauma, requiring medical and psychological treatment.

110.    Defendant Sheriff Ric Bradshaw, in his official capacity, is vicariously liable for the acts of Defendants Scott and Doe under the doctrine of respondeat superior, to the extent Defendants Scott and Doe were acting within the course and scope of their employment at the time of the incident.

**Count VIII**
**Negligent Infliction of Emotional Distress**
**(Against Defendants Scott and Doe)**

111.    Plaintiff Carmen Flores repeats and realleges Paragraphs 1 through 34 as if fully set forth herein.

112.    At all times material, Defendants owed Ms. Flores, as a foreseeable bystander and as Nicholas's grandmother with whom he resided, a duty to act reasonably under the circumstances, to refrain from using excessive or unnecessary force, and to avoid negligently inflicting foreseeable emotional distress upon her by violently attacking and unlawfully seizing her grandson in her immediate presence.

113.    Defendants Scott and Doe breached that duty when, without lawful justification and using excessive force, they grabbed Nicholas by the neck, choked him, threw him to the ground, and applied knee and leg pressure to his head while he was on the cement, all in Ms. Flores' immediate presence and within her sensory perception.

114.    Ms. Flores was physically present at the scene, visually and audibly perceived the entire event as it occurred, including the choking, throwing to the ground, and knee-on-head restraint, and experienced a contemporaneous, immediate, and severe emotional reaction, including shock, terror, and profound fear that her grandson would be seriously injured or killed.

115.    As a direct and proximate result of witnessing this violent attack and unlawful arrest of her grandson, Ms. Flores suffered and continues to suffer severe emotional distress, including anxiety, depression, nightmares, intrusive recollections, and psychological trauma, which are serious and of such a nature that a reasonable person in the same circumstances would be unable to adequately cope with.

116.    Defendant Sheriff Ric Bradshaw, in his official capacity, further breached his duties by failing to properly train and supervise deputies, including Defendants Scott and Doe, regarding the use of force, the dangers of neck restraints, and the handling of encounters in

residential areas where family members are present and foreseeably may witness deputies' actions.

117.    The negligent acts and omissions of Defendants, as described herein, were a direct and proximate cause of Ms. Flores' severe emotional distress and related injuries.

118.    Ms. Flores has incurred and will continue to incur damages as a result of her emotional distress, including, but not limited to, mental anguish, severe emotional distress, anxiety, depression, nightmares, intrusive recollections, and psychological trauma.

119.    Defendant Sheriff Ric Bradshaw, in his official capacity, is vicariously liable for the negligent acts and omissions of Defendants Scott and Doe under the doctrine of respondeat superior, as Defendants Scott and Doe were acting within the course and scope of their employment at all relevant times.

## Count IX
## False Arrest
## (Against Defendants Scott and Doe)

120.    Plaintiff Nicholas Flores repeats and realleges Paragraphs 1 through 34 as if fully set forth herein.

121.    This claim is pleaded in the alternative, to the extent Defendants Scott and Doe are found to have acted within the course and scope of their employment and without malicious purpose, in which case Defendant Sheriff Ric Bradshaw is vicariously liable pursuant to Fla. Stat. § 768.28.

122.    Under Florida law, an officer may not arrest an individual without a warrant unless the officer has probable cause to believe that the individual has committed a crime. At all times material, Defendants Scott and Doe owed Nicholas a duty to refrain from arresting him without probable cause.

123.    Defendants Scott and Doe intentionally restrained and arrested Nicholas by choking him, throwing him to the ground, restraining him on the cement with a knee and leg on his head, handcuffing him, and taking him into custody.

124.    Plaintiff Nicholas Flores did not consent to this restraint, seizure, or arrest.

125.    At the time of the arrest, Nicholas had committed no criminal offense. He was merely walking outside with a cane, approached an unmarked vehicle he believed was following him, and held a cell phone in his hand while speaking to his grandmother.

126.    Defendants lacked probable cause or arguable probable cause to arrest Nicholas for obstruction of justice/resisting without violence or for any other offense, as Nicholas's conduct was lawful and did not constitute obstruction, resistance, or interference with any lawful duty.

127.    The criminal charges of obstruction of justice/resisting without violence that were brought against Nicholas were later nolle prossed by the State Attorney's Office on October 22, 2025, due to insufficient evidence, confirming the absence of probable cause and the impropriety of the arrest.

128.    The restraint and arrest of Nicholas were therefore unlawful under Florida law and constitutes false arrest.

129.    As a direct and proximate result of Defendants' false arrest of Nicholas, he suffered loss of liberty, humiliation, emotional distress, injury to reputation, and physical injuries, including a TBI, as well as related damages such as medical expenses and loss of enjoyment of life.

130.    Defendant Sheriff Ric Bradshaw, in his official capacity, is vicariously liable for the false arrest committed by Defendants Scott and Doe under the doctrine of respondeat

superior, as Defendants Scott and Doe were acting within the course and scope of their employment and in the line of duty at the time of the arrest.

131.    Alternatively, Defendants Scott and Doe acted in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Nicholas's rights, exposing them to personal liability notwithstanding § 768.28(9)(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants and award the following relief:

A. As to Plaintiff Nicholas Flores, compensatory damages in an amount to be determined at trial for physical injuries, including Traumatic Brain Injury, pain and suffering, mental anguish, medical expenses, loss of liberty, humiliation, injury to reputation, and loss of enjoyment of life;

B. As to Plaintiff Carmen Flores, compensatory damages in an amount to be determined at trial for severe emotional distress, mental anguish, psychological trauma, loss of enjoyment of life, and related expenses;

C. Punitive damages against the Individual Defendants only in an amount to be determined at trial, to the extent allowed by law, for their willful, wanton, and reckless conduct;

D. A declaration that Defendants' conduct violated Plaintiff Nicholas Flores's constitutional rights under the Fourth Amendment to the United States Constitution;

E. An injunction requiring Defendant Sheriff Ric Bradshaw, in his official capacity, to implement appropriate policies, training, supervision, and discipline regarding the use of force, the use of neck restraints, lawful grounds for arrest, and interactions with

citizens who are recording police activity, as Nicholas faces a real and immediate threat of future injury due to the ongoing policies and practices of the Palm Beach County Sheriff's Office;

F.  Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and applicable Florida law;

G.  Such other and further legal and equitable relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 12, 2026,                    Respectfully Submitted,

                                             By: */s/ Renee Cook*
                                                 Renee Cook

                                             Florida Bar  No.:  1005565
                                             Cook Law Office PLLC
                                             1075 Oakleaf Plantation Pkwy
                                             Ste. 304, #239
                                             Orange Park, Florida 32065
                                             Tel: (904) 897-2247
                                             Renee@cooklawofficepllc.com